Yes, Your Honor, Paul Hughes for Appellant John Williams. I'd like to reserve about three minutes of time. Okay. Watch your time. The district court dismissed plaintiff Williams' suit finding misjoinder. That decision was wrong, and notably defendants do not appear to attempt that it was correct. There's no dispute here that Rules 18, 20, and 21 apply to prisoner suits, just like all other federal civil litigation. And because this complaint meets that standard established by those rules, the decision below must be reversed. Rule 18 permits the joinder of any claims against a party properly subject to suit. In turn, Rule 20A2 permits joinder of multiple defendants where the relief sought is with respect to or arising out of the same transaction occurrence or series of transactions occurrences and also involves any question of law or fact common to all. Mr. Hughes, as you know, the district court seemed to put a lot of faith in the George v. Smith Seventh Circuit case. Tell us why the court was in error in doing that. Yes, Your Honor. We don't think there's anything necessarily incorrect about George v. Smith, that George v. Smith in its essence says Rules 18, 20, and 21 apply in this context, and we think that's absolutely correct. We think, though, that the district court came off course in two separate respects in its reliance on George v. Smith. For one, it used a standard of joinder that seemed to depart from Federal Rule 20. That rule provides a very clear test as to when claims or parties are properly joined. And to be sure, the court did cite Rule 20, but in determining whether or not there was joinder appropriate in this case, the court just asked if the claims were related. It didn't provide the further test of Rule 20. And then PLRA does not change the standard, right? Yes, Your Honor. We do not believe that there's any basis to conclude that the PLRA changes any of the controlling standards. That, again, the Supreme Court said in Jones v. Bach that PLRA only amends the controlling Federal Rules when the PLRA expressly says so. And there's nothing in the PLRA that would suggest that there's a change in the rules, and nor does George v. Smith suggest the contrary. In this particular case, let's assume we get to the point of actually looking at whether the court abuses discretion on the disparate claims matter. The claims that predict against Lieber, Holmes, Bogman, Ramos, and Mendoza against Hutchins, Crane, Cantu, and Moran, in another word, in another group, seem wildly botched up. But this is a pro se petition. Do we have to give a lot of leeway there because it's pro se? Well, Your Honor, we do believe that there should be some leeway given to a pro se plaintiff who's drafting this complaint, that there is some leeway that's appropriate both under the Rule 1820 standards as well as throughout his drafting the complaint under Rules 8. That said, I do believe under any standard the Court would apply. His claims do have sufficient connective tissue between the claims that makes them part of the same series of transaction or occurrences. I think there are two main threads that connect. There are about four separate events or occurrences that he alleges, one in early August 2006, later August, October 2006, and then in January 2007. The two threads, though, that connect these, one, first, he argues that they're in retaliation for his making complaints. He avails himself of the prison grievance procedure. He's filed complaints. He argues that in Incident A, effectively, something untoward happens. He complains about that. He files a grievance, says this is right. And then Incident B happens as retaliation for his grievance lodged in Incident A. So that merges the first and the second, Incident A and Incident B together. The second thread that connects these incidents together is his allegations of an overarching conspiracy, what he terms the code of silence. He contends that these defendants conspired together in order to suppress his reporting of violations that were occurring in the prison and to prevent any sort of outside oversight as to what was occurring. It's notable that this code of silence is not something that's his own creation. As Exhibit A to his complaint, he attaches a February 2004 report from the director of the California Department of Corrections that notes, in fact, that there is a code of silence that exists in some California institutions. And the memo itself recognizes that the code of silence operates to conceal wrongdoing. It also notes in some institutions a, quote, conspiracy among staff that failed to report violations of policy. So this conspiracy that he's alleging has been externally noted and recognized. And in his complaint, he's alleging that that conspiracy links together these separate elements. Let's take a step back. This is the Eastern District of California, which has more of these petitions than any district in the United States. There are very few voters in the Eastern District. And so they continue to build more prisons. And the backlog of these is just horrendous. And we're working as a circuit to try and improve that. I've even volunteered until my colleagues will reverse me, I suppose. And so he Not to be a prisoner, but rather to process the case. So Magistrate Judge Hallows is at the screening point, which we have encouraged and the State, of course, has encouraged. Take a close look to get something. Do more case management. Now, if I took a look at this and said if this one goes to trial, this would be a forever case. So he wants to do something, and he picks on his joinder issue. But had he done Rule 8, would you be standing here if he had made the – if he had required an amendment pursuant to Rule 8? Well, Your Honor, I suppose that the question is why he would have requested Rule 8. If it were on a joinder – Yeah, well, you can't get to the joinder. But if you just want a plain and simple, this is a pretty long complaint. I mean, they come out of the prison, but how many pages is it, a couple of hundred pages? Well, his complaint's 35, 36 pages, and then he – Plus? He attaches – yes, Your Honor. He attaches all of his documentation of having exhausted his – You can't dismiss for – Well, Your Honor, I do believe that is an important aspect of this case, is that, as you know, in the Eastern District of California, there are hundreds of cases that are looking to the Seventh Circuit decision in George v. Smith, and – They're looking for a new way. Yes. And we have to decide that case. Yes, Your Honor. That – as we submit in our briefing – well, in addition to our principal contention that we think joinder was appropriate, our secondary point is that Rule 21 precludes the use of dismissing a lawsuit in its entirety upon a finding of misjoinder. So you would be – What should he have done? I'm sorry. Forgive me. Your Honor, if he does find misjoinder, and again, if the Court disagrees with our first contention and gets – Here, just argue end of it. Absolutely. Your Honor, I believe there would be two options that Rule 21 would permit. One would be that district court could simply fix the complaint as the district court sees fit for the plaintiff, which could mean severing the claims into separate lawsuits. It could also mean a more drastic remedy of dropping some of the parties, dropping some of the defendants to the suit. The other alternative is the court could tell the plaintiff, this is how I propose to fix your suit. If you want to do something differently, I will give you the option to fix it yourself. Otherwise, this is how I'm going to fix it. Just Rule 21 takes away from the toolbox of remedies dismissing the suit in its entirety. However we deal with the joinder issue, do you not agree that we need to affirm the dismissal of the claims against the CDCR based on the Eleventh Amendment and immunity under the Eleventh Amendment? Your Honor, we have not appealed that issue. Okay. So basically, that's a done deal. We're just talking about these individuals, right? Okay. Yes, Your Honor. So, again, we do believe that there is proper joinder, and secondarily, we do believe that if the Court were to disagree with our view on joinder, that the remedy that was chosen was incorrect. To settle it, to determine this case, we wouldn't have to decide it. Whether it's appropriate or not, we could just decide under the rules he can't do it. Your Honor, that would be, I believe, a proper disposition of the case. You could remand or you could reverse and remand to the court saying that dismissal was inappropriate. I would encourage that it may be wise to decide the joinder to give the court guidance so we don't get to the point on the substantive question. On the Seventh Circuit case, because everybody is using it out there. Yes, Your Honor. But I do believe that would be an appropriate resolution if the Court were to decide. Just to take a few moments, the defendants, again, to reiterate, do not seem to be challenging us on the joinder point. They do argue that Rule 41b would be an alternative basis for affirmance. We do not believe that Rule 41b provides any basis here. This Court's precedent, Edwards v. Marron Park, makes very clear that when a court dismisses a claim without prejudice, a plaintiff has the right to rest on their complaint as filed, and as long as they inform the district court that that is their intention to do so, they may have a complaint that's been dismissed without prejudice. And there's nearly no question here that the Mr. Williams made it clear that he wanted to stand on the complaint. Is that correct? Yes, Your Honor. On, I believe it was November 23, 2006, he filed a document with the Court that, quote, says, Williams hereby requests that the Court enter final judgment in this matter in order to permit jurisdiction by the Ninth Circuit Court of Appeals. The document was captioned, Motion in Request for Entry of Final Judgment to Appeal the Magistrate-Judge Screening of Complaints. So he made crystal clear that his intention was to rest as he had filed and to bring an appeal to this Court. And it's based upon that, that the magistrate, Judge Hollows, dismissed the action, not just the complaint. Yes, Your Honor. In the first order, in June 2009, the magistrate determined that there was misjoinder and then dismissed the claim without prejudice at that point. He filed a reconsideration motion, and then he actually filed an appeal to this Court, which this Court dismissed because he didn't have a final dismissal with prejudice. When he returned to the district court, that's when he filed his November 2006 or, sorry, November 2009 request for conversion into a final judgment, which the Court provided him at that point. If we agree with you, I'm not saying we do, but if we agree with you, do you think that an opinion is warranted here to clarify the George v. Smith issue? Your Honor, I suggest it would be. The George v. Smith issue has been cited hundreds of times, I believe now over a thousand times, in the district courts of this circuit. So I do believe that that's causing a great deal of confusion. And again, even though George does not say that dismissal is an appropriate remedy, I do believe a number of courts are misapplying George to find dismissal, notwithstanding Rule 21, and I do believe that would require some explanation or clarification from this Court. Thank you. We'll hear from the State. Good morning, Your Honors. I'm Vicki Whitney of the State Attorney General's Office, representing the defendant Alpelli, Warden Walker, here. As the Court is aware, there was no service ordered in the district court, so at the request of this Court, we entered an appearance on behalf of defendant Walker. Your Honors, one of the things that has to be addressed first is the fact that the  court has to make a decision or make a statement about the holding of George. The defendants have submitted in their briefing and submit to the Court now that a decision about George at this point is merely an advisory opinion in the context and circumstances of this case, because while the plaintiff has argued that the dismissal below was not under Rule 41b and was solely limited to the misjoinder of the parties, that is not borne out by the record. As this Court knows, under the appellate procedures and decisions in this circuit and in every circuit in the country, the court can affirm the district court's decision on any grounds found in the record. The myopic view that Williams has asked this Court to take to say that the dismissal was only on misjoinder simply would ask this Court to ignore seven pages of the nine-page order and focus solely on 19 lines of that order. So from the State's perspective, if we concluded that in light of Mr. Williams's decision to stand on the complaint, as he added, if we think that the court improperly applied the joinder rules and improperly dismissed it, then what we ought to do is just have a mem dispo that sends it back to the district court to do whatever it wants to do, perhaps under Rule 8, to handle it that way. Is that your perspective? Well, Your Honor, certainly that would be the case. If the Court does in fact limit the dismissal or find that the dismissal under Rule 41b, which the order, by the way, specifically says it's being dismissed under 41b and the local rule in the Eastern District applicable, then the misjoinder is the issue. We still submit that there was a misjoinder of the parties in the claims as the district court enumerated. And in the order of the screening order itself, where the court says that there have been unrelated claims, it says, as set forth above. You have to look at that, because what the court did in the district court was lay out in the page before it talks about the issue of joinder and the George case. The ways in which the plaintiff here has made claims against unrelated defendants for unrelated instances covering more than eight months, and as the district court noted, and something that this Court in Schmidt says can be considered, you've got to look at the fact that this was the 11th complaint in four years filed by Mr. Williams that continued to allege these overarching claims of a code of silence or a conspiracy. So you want us to affirm the dismissal on an alternative ground, and what is the alternative ground specifically that you want? Rule 8? Well, Your Honor, it can be affirmed on two grounds. First of all, I would first clarify the position is that it would not be necessarily an alternative ground. Because the order of dismissal itself, in the record at page 40, it mentions that he's not amended his complaint and that he has not abided, he's been failure he's failed to file an amended complaint consistent with the orders of this court. One of those orders is a screening order, which seven pages of it talks about his failure to state a claim and his failure to provide a concise and plain statement. So while if the court determines that Ms. Joinder was dismissal, the record bears out that the alternative grounds for affirmance of the district court's decision is that he failed to state cognizable legal claims and that he failed to comply with the finite and simple requirements of Rule 8a and 8e to set forth a simple and concise statement. And I think of import, with respect to the George decision, in trepidating George yesterday, 1,031 district court cases in the Ninth Circuit have cited to George. We would dispute the fact, as Williams has contended, that they've misapplied George, they have not. What they have done is they have cited to the provisions of George that says you cannot file a buckshot complaint. And that principle we would embrace. To the extent this court wants to adopt or make a statement about what George says, that kind of a statement and what George court criticized the district court for not doing, which was screening the complaint and questioning this type of a buckshot complaint and letting it get all the way down to a summary judgment motion, this district court here, Judge Hollows, did. He did the opposite of what the George court criticized the district court in that case of not doing. So we have to look at the fact that Judge Hollows was doing his job under the screening provisions of the PLRA, and we don't believe, I don't think there's any dispute, that what George has stated is that if a free person files a buckshot complaint that doesn't comply with all the pleading requirements of the federal rules, that includes 8A, 12B6, 20A. Yeah. That's true, I suppose. Although I didn't find buckshot complaint in the rules, so that's subject to interpretation. Correct. But there's no question. There's no question about the screening device and its absolute necessity. Absolutely. The difficulty is that it still has to be done under the rules. Correct. There's no added thing that we can give it by calling it a buckshot complaint or otherwise. And under the rules, the joinder rule doesn't allow dismissal requirement. That's correct. I mean, he can redo it himself and make amendments. But how do we get around that? Even if we could interpret the order of Magistrate Judge Hollows as one that deals not only with Rule 20 but with Rule 8 and Rule 12, et cetera. Certainly. If part of it, of the ruling that's before us that dismisses the entire complaint is invalid under Rule 20, how would we affirm it? Because, Your Honor, under this Court's precedent, under U.S. Forest Service, this Court can affirm the decision of the district court if there's evidence in the record or there's anything in the record to support it, regardless of whether the district court would like it. And what would that be? What would that be? I think Judge Wallace has well articulated the struggle. Certainly. Mr. Williams said he was going to stand on his complaint. Right. Move forward George's, you know, whatever about the buckshot. But his order wasn't followed. He's dealing with this very common problem. And yet the rules are pretty clear that, you know, at least arguably there's this abuse of discretion concept about dismissal, but you can't just dismiss based on Miss Joyner. He never really got to the question of Rule 8. On what basis do we uphold this? We have great empathy for the district judge. Don't get us wrong here. I mean, this is a real problem. Yes. We don't want to mess it up. We don't want to make it more difficult for the district judges. But in this particular case, since he didn't reach Rule 8, he didn't decide it that way, he didn't do a 12b-6 or anything like that, what do we uphold this on? Your Honor, you can uphold this on 1915, Section 1915, and the basis for or the requirement that a court screen to rule, to eliminate any frivolous claims, things that fail to state a claim, which is essentially 12b-6. But did the court rely upon that? I mean, we could maybe say that that's what happened, but did the district court rely on that? I'm not sure I see that. Right. Well, I guess the simplest way is to go to the general appellate principles that a court, this court presumes that the district court's decisions are correct, and the appellant has the burden of overcoming that presumption. Okay. But in this particular case, though, the appellate has appropriately pointed out that Mr. Williams stood on the complaint, that the judge here has clearly, if you just look at the Rule 20 approach, particularly when he's pro se, it's just not an absolute open and shut deal. It can't be dismissed on that basis. So I guess I'm looking for some help from the government as to how do we address this? We want to follow the rules. We want to respect Mr. Williams' right, but we also want to respect the prisoner complaints. How should we do this? What do we uphold? What can we uphold based upon the facts in this case? Yeah. I think in the facts in this case, Your Honor, it would be based on an assumption, or that Williams' position is based on the assumption that the court didn't follow the Federal Rules of Civil Procedure. It didn't adhere to Federal Rule 21. Right. Yeah. And there's nothing really to suggest and to confirm that. And under the abuse of discretion standard under Rule 41B, there must be a definite and firm conviction that what the court did was commit a clear error on all the circumstances before it. And I don't think that's present here. But if we were to dismiss saying that there was implicit in his determination or that it's plain from the face of the complaint that it does not meet the requirements of Rule 8, let's take that approach, would that be a dismissal with prejudice or without prejudice? Well, under this Court's precedent in McHenry, Rule 41B permits the dismissal with prejudice of a complaint that fails to comply with Rule 8. But now we're saying that even though this wasn't what the court below expressly found that sits ground, and therefore it wasn't something that the appellant had an opportunity to really meet, we're going to dismiss it with prejudice? That seems strange. It isn't, Your Honor, when you look at the fact that as well, if you take the position that Williams has advocated in his opening brief that you review a screening order de novo, and in that case, this Court would then look at everything that was in the record before, in the promise of the screening order itself. And at that time, it's very clear, an 80, more than 80-some paragraph complaint, more than 200 pages, it's not a simple and concise direct statement of the claims. So that also, if you're applying a de novo review. I think the irony of what you're saying, the judge below said, I don't think you have proper joinder, but I'm going to give you another shot. Yes. You're saying that on appeal, we should say on a ground that the district judge did not rely on expressly, we think nevertheless that the complaint is defective under Rule 8, and we're not going to give you another shot. We're going to dismiss with prejudice. How do you, how does that accord with the situation? Well, because to be honest with you, the plaintiff's failure to address even Rule 8 or any other basis in the opening brief, he's waived any contention that it didn't, that the Court would have erroneously done that, including the failure to state claims. Wait a minute. You're saying that the district court did not deal with Rule 8, but the fact that Mr. Williams didn't talk about it makes it a waiver? No. Let me restate that. Okay. What we are saying is that the district court, while it did not specifically cite to Rule 8 in the screening order, it did talk about what is required for pleading. And that is to state on the record on page 29. This is ER 29. ER 29, that after setting forth what the Court had to do for screening purposes, it talked about what a complaint must contain. And that is more than a formulaic recitation of the elements, citing Twombly, of course. It talked about what the complaint has to say. Moreover, importantly also, is the fact that the Court walked through, here is your road map. Here's how you fail to state a claim. And I get that. And I have great empathy for the judge. But if the judge ultimately relied upon the wrong rules to get to where he was leaving and the defendant wouldn't go there, don't we have to send it back and then the judge can go under 8 and make a decision there? Not necessarily, Your Honor, because I would point this Court to its decision in Sprint v. Mendelsohn. I'm sorry, it's a U.S. Supreme Court case, Sprint v. Mendelsohn, which basically if it would be a finding that the order of dismissal might have been ambiguous. And in such cases where it may be ambiguous, an appellate court should not presume the district court intended an incorrect legal result where its decision is equally susceptible to a correct reading. Even though the district court didn't cite the rule on which it was relying, we could sustain it on. That's what I'm struggling with. I mean, again, all due respect to the district judge. But if we find that the use of the Joyner rules here was improper and you can't dismiss for that, how can we sustain it based upon that, based upon Brent v. Mendelsohn? I mean, if he just said, hey, you know, this doesn't meet Rule 8 either. This is a mess. And I'm dismissing on that basis, too. Hey, no problem. Then we can get there. But he didn't say that. Admittedly, Your Honor, the order did not specifically mention Rule 8, but it does discuss the pleading principles surrounding it out of Twombly. And it moreover goes further into stating all the reasons why he failed to state a claim that don't say the complaint. He's choosing to stand on it, which is perfectly within his right, of course, to do, and not amend it, left the complaint completely defective, and left the district court with no other choice but to dismiss it with prejudice at this point. So I see that I'm out of time. Yeah. Thank you very much for your argument. We'll hear rebuttal from Mr. Williams' counsel. Mr. Hughes. Thank you, Your Honor. Just two brief points. First, I don't think we have very much point of disagreement on George v. Smith. I think we all agree that Rules 18, 20, and 21 provide the correct standards, and indeed, they can be powerful tools to, you know, for the district court to act as gardener, to weed out claims. But because we don't have a whole lot of time, let me just ask you this specifically. Let's assume, arguendo, that at least I agree with you about the joinder issues and so on, that the Court should not have dismissed this and so on. But if this place is, this complaint really has little merit, it's not going anywhere, what do we do with it? Your Honor, I think that the proper result is, if you agree with our position on joinder, is to remand, to allow the district court to deal with this. A couple points. One is, Judge Rakoff was pointing out earlier, one of the key points is district courts have discretion under Rules 8 and Rules 12b-6 to determine if it finds a complaint meritorious, if it permits a plaintiff to come back and to reamend or to resubmit, that that's well in the discretion of the district court.  You know, I feel in an appropriate way. So I think that the proper answer would be to send it back. Secondarily, as we explain in our brief, we do think there are valid claims under retaliation conspiracy, as the Court, you know, appears to have. And whether we agree with that or not, we're really talking about a pleading issue here, and they really didn't, the district court, unfortunately, didn't really look at the 12b-6 aspect of it or even the 8, although in the general sense it did. It just didn't talk about those functions. Your Honor, yes, the Court did provide guidance, is the way I would view it, as to what it wanted to see in a complaint. It was certainly helpful and the magistrate was certainly going out of its way to do that, but it did not rest on any sort of alternative ground at that basis. And your position is that if the district court didn't say it, we can't rely on it? Yes, Your Honor. We don't believe that it would be appropriate to remove that discretion from the district court to determine how to do so. You know, we believe the defendants are effectively asking this Court to take on the role of the screening panel. And I appreciate Judge Wallace's comment that he urges his colleagues to sit on the screening panels, but that's not the appropriate juncture on appeal, that it should go back to the district court for screening in the first instance. The magistrate Hollis was stipulated to by both parties to try this as a district court judge, right? Yes, Your Honor. So he's the one that gets it back. Yes, Your Honor. Okay. I don't think we have any other questions. Thank you very much. The case of Williams v. CDC is submitted. Oh, thanks to both counsel. We were really helped by this. Yes, absolutely.
judges: Rakoff, Wallace, Smith